STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION, AT&T COMMUNICATIONS OF THE SOUTHERN STATES, INC., CENTRAL TELEPHONE COMPANY—NORTH CAROLINA, GTE SOUTH, INC., CAROLINA TELEPHONE AND TELEGRAPH COMPANY, SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, THE ATTORNEY GENERAL OF NORTH CAROLINA, AND THE PUBLIC STAFF—UTILITIES COMMISSION, APPELLEES v. CENTEL CELLULAR COMPANY, RALEIGH/ DURHAM MSA LIMITED PARTNERSHIP, FAYETTEVILLE MSA LIMITED PARTNERSHIP, TELESPECTRUM, INC., CENTEL CELLULAR COMPANY OF NORTH CAROLINA, CAROLINA METRONET, INC., TRIAD METRONET, INC., FAYETTEVILLE CELLULAR TELEPHONE COMPANY, McCAW CELLULAR COMMUNICATIONS, INC., METRO MOBILE CTS OF CHARLOTTE, INC., VANGUARD CELLULAR SYSTEMS, INC., AND GTE MOBILE COMMUNICATIONS INCORPORATED, APPELLANTS; UNITED STATES CELLULAR CORPORATION OF NORTH CAROLINA, CROSS-APPELLANT

No. 9010UC1133

(Filed 20 August 1991)

**Telecommunications § 1.2 (NCI3d) — cellular telephones — wide area call reception — rates**

The Utilities Commission did not err by ordering cellular telephone carriers to pay access charges to local exchange companies when providing wide area call reception (WACR) to customers, even though WACR technology has now eliminated part of the connection process so that the landline interexchange carrier (IXC) and one of the local exchange companies (LECs) are bypassed and even though a traditional long distance call may be local on cellular. In discharging its regulatory responsibilities the Commission must consider the charges that telephone companies make for their services and their impact on the local exchange customers and only permit additional service if the Commission finds that it will not jeopardize reasonably affordable local exchange service. Cellular calls displace remunerative revenues that traditionally go to the LECs and IXCs and which directly contribute to the maintenance of reasonable local rates. N.C.G.S. § 62-110(b).

**Am Jur 2d, Public Utilities § 240; Telecommunications § 20.**

Judge GREENE concurring.

APPEAL by applicants from order entered 11 May 1990 by the North Carolina Utilities Commission. Heard in the Court of Appeals 13 May 1991.

On 9 May 1989 Raleigh/Durham MSA, Fayetteville MSA, United TeleSpectrum, and Centel Cellular Company (carriers) filed with the North Carolina Utilities Commission a revised tariff to offer wide area call reception (WACR). The new service would allow cellular customers to receive calls placed to their local cellular telephone number when traveling outside their home service area. The Public Staff for the North Carolina Utilities Commission (Public Staff) moved to suspend the tariffs on 19 July 1989 on the grounds that "these tariffs raise substantial generic questions and that the Commission should suspend these tariffs until it has determined whether cellular carriers should be allowed to offer long distance service between service areas, and, if so, under what terms and conditions." On 31 July 1989 the Commission granted the motion prohibiting Centel from carrying traffic between Metropolitan Statistical Areas (MSAs) over its own facilities (except as previously authorized) pending an investigation and hearing. The Attorney General and the following companies were allowed to intervene: United States Cellular Corporation of North Carolina, AT&T Communications of the Southern States, Inc., Carolina Metronet, Inc., Fayetteville Cellular Telephone Company, Triad Metronet, Inc., Carolina Telephone and Telegraph Company, Central Telephone Company, Vanguard Cellular Systems, Inc., Southern Bell Telephone and Telegraph Company, McCaw Cellular Communications, Inc., GTE South, Inc., and Metro Mobile CTS of Charlotte, Inc. By order issued on 11 May 1990 the Commission approved Wide Area Calling but required cellular carriers to pay access charges to the local exchange companies for calls carried from one cellular service area to another over cellular facilities (interCGSA). All the cellular carriers appealed the imposing of such charges.

Traditional telephone companies and long distance providers have long had a system of charges for long distance calls. LECs (local exchange companies, such as Southern Bell) provide long distance service between exchanges within their service areas — local access transport areas (LATAs). IXCs (landline interexchange carriers, such as AT&T) carry calls between different LATAs. With the introduction of cellular phone service the Utilities Commission had to allocate charges therefor. When the problem of integrating cellular service within the state's traditional landline

service first arose the technology of the cellular companies could only provide service within specific geographical areas, called Cellular Geographic Service Areas (CGSAs). But now a cellular company's service area may cover one or more traditional LEC exchanges; all or part of more than one LATA; and parts of one or more than one state; and even intraCGSA service can consist of calls which, if placed by traditional means, would have been local, intraLATA long distance, interLATA long distance, or interstate long distance. Since the cellular service areas are superimposed on the service areas of traditional local and long distance telephone companies, what would have been a LEC long distance call to a neighboring town may be a local call on cellular service and what would have been a traditional long distance call may be local on cellular. Although the CGSAs are larger than the traditional LATAs, the Commission treated these areas as LATAs. The FCC and the Utilities Commission made concessions for the cellular companies by authorizing their service in the CGSA without regard to whether the calls would have been intraexchange, interexchange, interLATA, intraLATA, or interstate.

Before WACR, the cellular customer had difficulty communicating as he traveled out of his home CGSA, and a landline caller faced many obstacles in trying to reach a cellular customer. Cellular companies could not carry calls as customers moved from one CGSA to another, and the calls would have to be redialed. Landline callers trying to reach a cellular customer could only do so if they knew both the location of that customer and the distinct roamer access number associated with the area. WACR technology allows a caller to reach a traveling cellular customer by simply dialing that cellular customer's local cellular number. WACR applies to interCGSA calls only. The cellular system, using existing facilities, will automatically locate the cellular customer and complete the call. Another benefit of WACR is the ability to sustain ongoing conversations without the necessity of redialing the call once out of range of a particular CGSA. WACR service applies to (1) calls from a land-based telephone to a mobile cellular phone, (2) calls from a mobile telephone to a local land-based telephone, and (3) calls from a mobile cellular phone to another mobile cellular phone.

WACR technology eliminates part of the connection process for calls from one CGSA to another. Prior to WACR an interCGSA land-to-mobile call was routed from the land-based telephone through

a "local" land-based LEC, through a long distance interexchange carrier (IXC), through a "foreign" LEC, through a "foreign" cellular company to a mobile cellular telephone. Under WACR, the same call would be routed from the land-based telephone to a LEC, to a local cellular company, to a mobile cellular telephone; the IXC and the foreign LEC would be bypassed. The Commission's order requires the cellular companies to pay an access charge to the LECs for these calls.

Originally, the certificates of public convenience and necessity that were issued to the cellular companies gave each company a geographical service area or CGSA. The certificates did not authorize carriage of traffic between the areas. Analogizing the CGSA areas to LATAs and the cellular companies to LECs, the Public Staff asserts that by expanding their services to interCGSA the cellular companies take on the characteristics of IXCs and should be treated as such with respect to the LECs. The Utilities Commission agreed and in a well reasoned order found, *inter alia*:

> 5. The service eliminates the need for a person calling a cellular subscriber outside of his home service area (a "roamer") to dial an access number for the MSA in which the subscriber is located prior to dialing his mobile telephone number. The Applicants propose to carry calls themselves from the MSA in which the call is delivered to the cellular company to the subscriber in a distant MSA.
>
>     . . . .
>
> 7. The rate structure for cellular companies to provide WACR should generally be based on the access charges paid by IXCs.

The Commission concluded that since cellular companies act like IXCs when they provide interCGSA service, it is only "fair and appropriate that cellular carriers should be required to pay access charges in these circumstances. The use of intrastate access charges will not thwart the use of wide area calling technology but it will minimize the prospect of harm to local rates and to subscribers of local service." The supporting evidence and conclusions stated in the order pertinent to this appeal were that WACR is analogous to long distance service and therefore:

STATE EX REL. UTILITIES COMMISSION v. CENTEL CELLULAR CO.

[103 N.C. App. 731 (1991)]

1. The cellular company should pay the appropriate access charge from the access tariff of its connecting LEC for all intra and interLATA traffic carried over its own facilities.

2. The cellular company should pay the same rates charged to resellers — i.e., a WATS charge plus access charges — for intraLATA traffic carried over LEC facilities.

The Commission recognized that with the introduction of WACR the LECs would lose some revenues and the cellular companies would be directly competing with the IXCs for revenues.

*Robert P. Gruber, Executive Director; Antoinette Wike, Chief Counsel, by Robert B. Cauthen, Jr., Staff Attorney, for Public Staff—North Carolina Utilities Commission, appellee.*

*Vice President-Administration/General Counsel Dwight W. Allen and Senior Attorney Jack H. Derrick for Carolina Telephone and Telegraph Company, appellee.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, by Jerry W. Amos; and General Attorney Edward L. Rankin, III and General Attorney David M. Falgoust, for Southern Bell Telephone and Telegraph Company, intervenor-appellee.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Karen E. Long, intervenor-appellee.*

*Crisp, Davis, Schwentker, Page & Currin, by Robert F. Page, for Centel Cellular Company, Raleigh/Durham MSA Limited Partnership, Fayetteville MSA Limited Partnership, TeleSpectrum, Inc., and Centel Cellular Company of North Carolina, appellants.*

*Parker, Poe, Adams & Bernstein, by Henry C. Campen, Jr., for GTE Mobile Communications Incorporated, Vanguard Cellular Systems, Inc., Carolina Metronet, Inc., Triad Metronet, Inc., and Fayetteville Cellular Telephone Company, appellants.*

*Law offices of Mitchell Willoughby, by John F. Beach and Mitchell Willoughby; and Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Robert W. Kaylor, for Metro Mobile CTS of Charlotte, Inc., intervenor-appellants.*

STATE ex rel. UTILITIES COMMISSION v. CENTEL CELLULAR CO.

[103 N.C. App. 731 (1991)]

*James E. Holshouser; and Law Offices of Mitchell Willoughby, by Mitchell Willoughby and John F. Beach, for McCaw Cellular Communications, Inc., intervenor-appellant.*

*No brief filed for United States Cellular Corporation of North Carolina, cross-appellant.*

PHILLIPS, Judge.

The appellants' variously stated contentions amount to the following: The Utilities Commission erred by ordering cellular carriers to pay access charges to local exchange companies when providing wide area call reception to their cellular customers; the Commission should not have required the cellular carriers to compensate the LECs for lost tolls due to the implementation of WACR; paying these charges will thwart the development of WACR technology; the rate structure for cellular service should be divorced from the traditional rate structure for landline service because the technology is different.

After reviewing the whole record as required by G.S. 62-94 and finding that the Commission's order is supported by substantial evidence, we cannot agree. In discharging its regulatory responsibilities the Commission must consider the charges that telephone companies make for their services and their "impact on the local exchange customers and only permit such additional service if the Commission finds that it will not jeopardize reasonably affordable local exchange service." G.S. 62-110(b). Access charges were initially designed to provide the same levels of contribution to local rates that existed prior to AT&T's divestiture and the implementation of access charges. Some toll revenues have been lost as a result of WACR. The evidence indicates that most cellular calls are made in business hours, the highest rate period, and in the absence of WACR would have been placed over the landline facilities. Thus, cellular calls displace remunerative revenues that traditionally go to the LECs and IXCs; revenues which directly contribute to the maintenance of reasonable local rates. Under the appellants' scheme, a cellular customer faced with the choice of paying the long distance charges during business hours at the landline rate or paying the equivalent of the local rate under WACR will naturally use his cellular telephone as often as possible, thus cutting into LEC revenues.

STATE ex rel. UTILITIES COMMISSION v. CENTEL CELLULAR CO.

[103 N.C. App. 731 (1991)]

The Commission has to view the disputed tariffs in light of the whole regulatory scheme, rather than in the isolated context of a new technology. The Commission's decision is supported by both evidence and reason. That a different decision could have been reached is no basis for reversing the decision that was made. *State ex rel. Utilities Commission v. Eddleman*, 320 N.C. 344, 358 S.E.2d 339 (1987).

Affirmed.

Judge WELLS concurs.

Judge GREENE concurs in the result with a separate opinion.

Judge GREENE concurring in the result.

I agree with the majority that the Utilities Commission did not err in ordering cellular carriers to pay access charges to local exchange companies when providing WACR to their cellular customers. I disagree, however, that the speculative evidence of alleged lost toll revenues supports the Commission's order.

If the only justification for the Commission's order is the alleged lost toll revenues, the position suggested by the majority, then this Court must reverse the order for being "[u]nsupported by competent, material and substantial evidence in view of the entire record as submitted" and for being arbitrary. N.C.G.S. § 62-94(b)(5), (6) (1989). Although the testimony before the Commission established a *potential* for lost toll revenues, the evidence did not quantify the amount of any such lost revenues with any competent, empirical evidence. *See In re Cellular Radio Telecommunications Companies*, Docket No. P-100, Sub. 79, 75 P.U.R. 4th 327, 344 (N.C.U.C., June 6, 1986) (no competent, empirical evidence to quantify lost toll revenues). Furthermore, in a subsequent reconsideration order in which the Commission concluded that access charges were inappropriate for mobile-to-mobile interCGSA traffic, the Commission reasoned that the absence of evidence of the alleged lost toll revenues prohibited a finding that the access charges be assessed because of alleged lost toll revenues. *In re Tariff Filings by Raleigh/Durham MSA, Fayetteville MSA, United Telespectrum, and Centel Cellular Co. to Establish Rates for Wide Area Call Reception*, Docket No. P-100, Sub. 109 at 5 (N.C.U.C., Oct. 10, 1990). The Commission's reasoning in the reconsideration order

applies equally to the order under consideration. Accordingly, the speculative evidence of the alleged lost toll revenues cannot provide a basis for the access charges for land-to-mobile and mobile-to-land interCGSA traffic. A contrary holding would violate N.C.G.S. § 62-94(b)(5). Furthermore, in light of the reconsideration order which does not provide for access charges for mobile-to-mobile traffic because of the absence of competent, empirical evidence of the lost toll revenues, the order, which provides for access charges for land-to-mobile and mobile-to-land traffic based on speculative alleged lost toll revenues, is an arbitrary order prohibited by N.C.G.S. § 62-94(b)(6).

Nevertheless, based upon evidence that cellular companies function like IXCs when providing WACR to their cellular customers engaged in land-to-mobile and mobile-to-land calls, the Commission concluded

> when . . . [cellular companies] do provide . . . [interCGSA] service, they behave functionally like an IXC. A structure of access charges has already been erected, one of the major purposes of which is to provide support for the local network. This local network is important not only in an economic and technical sense as a gateway to landline subscribers but as a social nexus, the value of which increased as the society approaches universal service. There is no reason that cellular companies, when they behave like IXCs, should not share the costs and responsibilities of IXCs. This means payment of access charges.

*In re Tariff Filings by Raleigh/Durham MSA, Fayetteville MSA, United TeleSpectrum, and Centel Cellular Co. to Establish Rates for Wide Area Call Reception*, Docket No. P-100, Sub. 109 at 10 (N.C.U.C., May 11, 1990). The cellular companies argue that because technology, price, size, and competition distinguish cellular carriers from IXCs, the Commission acted arbitrarily in concluding that cellular carriers behave functionally like IXCs when providing WACR. However, various witnesses testified that in offering WACR for land-to-mobile and mobile-to-land traffic, the cellular companies operated much like IXCs because they use local exchange companies to originate and terminate calls. Accordingly, the Commission's conclusion on this point is supported by "competent, material and substantial evidence in view of the entire record as submitted," is not arbitrary, and supports the order that the cellular carriers

pay to local exchange companies access charges competitive with the access charges paid by the IXCs. N.C.G.S. § 62-94(b)(5), (6). I would affirm the Commission's order.